In the Matter of the MARRIAGE OF Sylvia Helen COLLINS and Stephen Wayne Collins.

In the Interest of B.A.D., A Child.

No. 07–93–0159–CV.

Court of Appeals of Texas, Amarillo.

Feb. 14, 1994.

Rehearing Overruled March 15, 1994.

Kimmel & Elms, Larry A. Elms, Lubbock, for appellant.

Felix Klein, Littlefield, for appellee.

Before REYNOLDS, C.J., and BOYD and POFF, JJ.

POFF, Justice.

Appellant Stephen Wayne Collins [hereinafter Stephen] brings this appeal from a default judgment granting Sylvia Helen Collins [hereinafter Sylvia] a divorce from an informal marriage, establishing Stephen's paternity of B.A.D., ordering him to pay child support, and dividing various community property assets. Stephen challenges the judgment by two points of error. In his first point, Stephen contends that the judgment rendered against him is void as he ·did not receive timely notice of the cause being set for trial or of the default judgment rendered against him. In his second point of error, Stephen contends that the trial court erred in allowing an informal marriage to be proven as the action was commenced later than allowed by Tex.Fam.Code Ann. § 1.91(b) (Vernon Supp.1993). We overrule both points of error and affirm the judgment of the trial court.

On September 27, 1976, Stephen and Sylvia began to live together as husband and wife. They agreed to be husband and wife and held each other out to the public as husband and wife. On September 27, 1977, a daughter, B.A.D., was born. The relationship between Stephen and Sylvia ended August 1986.

Sylvia filed a petition for divorce in August 1992, wherein she sought custody of the child and child support from Stephen. On November 20, 1992, Stephen accepted the citation informing him of the suit filed against him. Stephen failed to timely answer and a default judgment was rendered against him. Sylvia was granted a divorce and the community property was divided. Additionally, the trial court found that Stephen was the child's biological father and ordered Stephen to pay child support.

In his first point of error, Stephen argues that the judgment is void as he was not served with proper notice of either the time at which the cause was set for trial on the merits or that default judgment had been rendered against him. Once a defendant has made an appearance in a cause, he is entitled to notice of the trial setting as a matter of due process. *LBL Oil Co. v. International Power Services, Inc.,* 777 S.W.2d 390, 390–91 (Tex.1989). The record shows that Stephen did receive service on November 20, 1993.

On the citation issued, the following notation appears in bold print:

NOTICE TO DEFENDANT: YOU HAVE BEEN SUED. YOU MAY EMPLOY AN ATTORNEY. IF YOU OR YOUR ATTORNEY DO NOT FILE A WRITTEN ANSWER WITH THE CLERK WHO ISSUED THIS CITATION BY 10:00 A.M. ON THE MONDAY NEXT FOLLOWING THE EXPIRATION OF TWENTY DAYS AFTER YOU WERE SERVED THIS CITATION AND PETITION, A DEFAULT JUDGMENT MAY BE TAKEN AGAINST YOU.

No answer was filed and Stephen failed to make an appearance. Thus, as no appearance was made by Stephen, no advance notice of the setting for the hearing was required.

Stephen also contends that the court erred by failing to provide him with notice of the default judgment entered against him. Rule 239a of the Texas Rules of Civil Procedure provides:

[a]t or immediately prior to the time an interlocutory or final default judgment is rendered, the party taking the same or his attorney shall certify to the clerk in writing the last known mailing address of the party against whom judgment is taken, which certificate shall be filed among the papers in the cause. Immediately upon the signing of the judgment, the clerk shall mail written notice thereof to the party against whom judgment was rendered ... Failure to comply with the provisions of this rule shall not affect the finality of the judgment.

Tex.R.Civ.P. 239a. This rule provides notification to a defendant that a default judgment has been entered against him so that he may pursue his post judgment remedies.[1] Failure to notify does not result in reversible error. *City of Houston v. Arney,* 680 S.W.2d 867, 873 (Tex.App.—Houston [1st Dist.] 1984, no writ). Specifically, failure to provide Stephen with notice of the default judgment entered against him does not constitute reversible error. Stephen's first point of error is overruled.

In his second point of error, Stephen contends that the court erred in finding that an informal marriage existed between Stephen and Sylvia because Sylvia failed to initiate the proceedings within the statutory time frame. Tex.Fam.Code Ann. § 1.91(b) (Vernon 1994), provides the following:

A proceeding in which a marriage is to be proved under this section must be commenced not later than one year after the date on which the relationship ended or not later than one year after September 1, 1989, whichever is later.

Relying on *Mossler v. Shields,* 818 S.W.2d 752 (Tex.1991), Stephen contends that § 1.91(b) is jurisdictional in nature and,

therefore, because Sylvia waited until 1992, six years after the relationship ended, to bring this action, the court lacked jurisdiction. We cannot agree with Stephen's contentions.

In the *Mossler* opinion, the Supreme Court could have easily chosen to find § 1.91(b) to be jurisdictional. However, no such pronouncement was made. Instead, the court chose to analyze § 1.91(b) in what we read to be classic limitation language. After setting out § 1.91(b), the court noted that "[o]nce the limitation pursuant to this statute has run, a party's subsequent claim of the existence of a common-law marriage stemming from the original relationship is barred...." *Mossler v. Shields,* 818 S.W.2d at 754. We note our holding that § 1.91(b) is a statute of limitations is supported by Supreme Court Justice Raul Gonzalez who stated that the Supreme Court interpreted the amendment of § 1.91(b) as having done "nothing more than add a statute of limitations" to claims alleging the existence of an informal marriage.[2] *Russell v. Russell,* 865 S.W.2d 929, 936 (Tex. 1993) (Gonzalez, J., dissenting).

All limitations statutes provide that a person *"must bring suit"* within a certain period of time. *See* Tex.Civ.Prac. & Rem. Code Ann. §§ 16.003, 16.004 (Vernon 1986). Instead of using this specific language, § 1.91(b) uses the phrase *"must be commenced."* Essentially, the two phrases are the same. It could be argued that by stating that a cause of action is barred if not brought or commenced within a certain period of time, all limitations statutes initially appear to be jurisdictional. However, the law in this state is clear that statutes of limitations are not jurisdictional. The defense of limitations does not bar a plaintiff from filing a lawsuit. A defendant who asserts the defense of limitations does not challenge the merits of a cause of action but only seeks to prevent recovery on that cause of action. Limitations statutes are designed to protect a defendant from having to defend a claim after his mem-

---

1. We note that the failure to notify did not adversely affect Stephen's appeal.

2. Although the characterization of § 1.91(b) as a statute of limitations was not an issue in this

case, the majority did not challenge Justice Gonzalez's statement concerning their interpretation of the section as a statute of limitations.

ory has faded, witnesses are no longer available or evidence has been lost. *Alvarado v. Gonzales,* 552 S.W.2d 539, 542 (Tex.Civ. App.—Corpus Christi 1977, no writ).

■ Section 1.91(b) limitation provides an affirmative defense to a claim that an informal marriage existed. However, as an affirmative defense, a defendant must affirmatively plead this defense of limitations or it is waived. Tex.R.Civ.P. 94. Unless the defense of limitations is specifically raised, a plaintiff will be able to bring suit and recover on it. In the present case, Stephen wholly defaulted. He chose not to file any response to the suit filed against him. As Stephen failed to plead that Sylvia was barred by limitations, he is precluded from raising the issue now on appeal. Furthermore, as previously stated, the purpose of § 1.91(b) is to protect a defendant from having to disprove old facts. As Stephen chose not to offer any defense, he can have no complaint about having to disprove old facts. Stephen's second point of error is overruled.

As the trial court's rulings with respect to paternity and child support are separate and independent from the determination of an informal marriage relationship and the dissolution thereof, we now review these issues. Stephen asserts that he is not the father of Sylvia's child and that the child support awarded exceeds the maximum amount allowed by law.

■ A man is presumed to be the biological father of a child if he and the child's mother were married at the time the child was born. Tex.Fam.Code Ann. § 12.02(a)(1) (Vernon Supp.1994). This presumption is one of the strongest known to our law. *Joplin v. Meadows,* 623 S.W.2d 442, 443 (Tex. App.—Texarkana 1981, no writ). Based on Sylvia's testimony, the trial court found that an informal marriage had existed between Stephen and Sylvia between the years of 1976 and 1986. As the court found that Stephen and Sylvia were married at the time that B.A.D. was born, Stephen is the presumed father of the child. No evidence was presented to rebut this presumption. As the presumed biological father, Stephen was correctly ordered to pay child support.

■ We next turn to Stephen's contention that the support ordered exceeds the maximum amount allowed by law. With respect to the amount of child support awarded, Tex.Fam.Code Ann. § 14.055(c) provides the following:

(c) More than $4,000 Monthly Net Resources. In situations in which the obligor's net resources exceed $4,000 per month, the court shall presumptively apply the percentage guidelines in Subsection (b) of this section to the first $4,000 of the obligor's net resources. Without further reference to the percentage recommended by these guidelines, the court may order additional amounts of child support as proven, depending on the needs of the child at the time of the order.

In ordering support for one child, Subsection (b) provides that the applicable percentage rate to be applied to the first $4,000 per month of the obligor's net resources is twenty percent. Tex.Fam.Code Ann. § 14.055(b) (Vernon Supp.1992).

Sylvia presented evidence that Stephen's net resources were in excess of $4,000 per month. Sylvia testified that Stephen and his father were partners in a construction business and Stephen earned between $1,000 and $2,000 a week. She also presented evidence of the child's severe medical problems requiring current and future medical expenditures.[3] The trial court ordered Stephen to pay child support in the amount of $1,300 a month. Based on the evidence before it concerning Stephen's net resources and the child's medical needs, the trial court did not err in establishing the amount owed by Stephen.

Accordingly, the judgment of the trial court is affirmed.

---

3. B.A.D. suffers from spina bifida, an illness which results in large medical expenditures. Sylvia testified that B.A.D.'s last hospital bill was $8,000 and that it was possible that this type of expense could be incurred on a monthly basis.

Sylvia also testified that although most of B.A.D.'s medical expenses are paid by Crippled Children and Medicaid, she is responsible for any amounts not covered by these two sources.